1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11   CHARLES MILLER,                              Case No.  1:21-CV-00337-JLT

12              Plaintiff,                        ORDER GRANTING DEFENDANT'S
                                                  MOTION TO DISMISS
13        v.
                                                  (Doc. 5)
14   BANK OF AMERICA, N.A.; and DOES 1-50,
     inclusive,
15
              Defendants.
16

17        Plaintiff Charles Miller asserts that Defendant Bank of America ("BOA" or "the Bank")

18   improperly permitted Plaintiff's wife, a joint account holder, to transfer and withdraw more than

19   $800,000 from their account without Plaintiff's knowledge.  Plaintiff also alleges that BOA failed

20   to conform to various anti-money-laundering regulations.  (*See generally* Doc. 1-1.)

21        Before the Court is BOA's motion to dismiss the action in its entirety pursuant to Rule

22   12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 5.)  Miller opposes dismissal, arguing that

23   the facts alleged are sufficient to support his claims.  (Doc. 10.)  In the alternative, Miller requests

24   leave to amend his complaint.  The Court finds the matter suitable for decision without oral

25   arguments; therefore, no hearing date will be set.  For the reasons set forth below, the motion to

26   dismiss is **GRANTED**.

27                              **BACKGROUND**

28        For the purposes of this motion, the Court assumes the truth of the allegations in the

1   Complaint.  At all relevant times, Miller held at least two bank accounts with Bank of America.

2   (Docs. 1-1 at ¶¶ 5–8; 10 at 3.)  Miller's wife—who is 65 years old and afflicted with early onset

3   dementia—was a joint owner of both accounts.  Due to his wife's condition, Miller claims that he

4   had instructed BOA not to process any transfers over $1,000 from the accounts without written

5   approval from both account holders.  Despite this instruction, BOA allowed Miller's wife to

6   transfer more than $830,000 from the joint accounts to third party fraudsters posing as

7   government agents from December 2019 to September 2020 without Miller's knowledge or

8   approval.  (*Id.*)  Miller alleges that many of his wife's transfers were sent to foreign countries.

9         Miller filed a complaint against BOA in Fresno County Superior Court on January 27,

10   2021, Case No. 21-CECG-00242.  Miller's complaint lists four causes of action against BOA:

11   negligence, conversion, negligence per se, and elder abuse.  BOA removed the action to this

12   Court on the basis of diversity jurisdiction on March 5, 2021.  (*See generally* Doc. 1.)  BOA then

13   filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc.

14   5.)  Miller opposed the motion on April 7, 2021, (Doc. 10), and BOA filed a reply on April 14,

15   2021.  (Doc. 11.)

16                                        **LEGAL STANDARD**

17         A Rule 12(b)(6) motion "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250

18   F.3d 729, 732 (9th Cir. 2001).  A claim should be dismissed under Rule 12(b)(6) when "the

19   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

20   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, under Rule

21   12(b)(6), "review is limited to the complaint alone."  *Cervantes v. City of San Diego*, 5 F.3d 1273,

22   1276 (9th Cir. 1993).

23         "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

24   accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

25   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The

26   Supreme Court explained,

27              A claim has facial plausibility when the plaintiff pleads factual
            content that allows the court to draw the reasonable inference that the
28          defendant is liable for the misconduct alleged. The plausibility

1
2
3

> standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

4   *Iqbal*, 556 U.S. at 678 (internal citations omitted).

5        On a Rule 12(b)(6) motion, all allegations of material fact are taken as true and construed

6   in the light most favorable to the nonmoving party.  *Fed'n of African Am. Contractors v. City of*

7   *Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law,

8   unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to

9   dismiss.  *Sprewell v Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *In re Syntex Corp.*

10  *Sec. Litig.*, 95 F.3d 922, 926 (9th Cir.1996).  To the extent that pleading deficiencies can be cured

11  by the plaintiff alleging additional facts, leave to amend should be granted.  *Cook, Perkiss &*

12  *Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations

13  omitted).

14                                      **ANALYSIS**

15       BOA moves to dismiss the Complaint in its entirety on the grounds that: the common law

16  negligence and conversion claims are displaced by the California Commercial Code and are

17  otherwise insufficiently pled; that negligence *per se* is not a proper cause of action and the cited

18  money laundering statutes do not provide Plaintiff with a private right of action; and that Plaintiff

19  fails to sufficiently plead an elder abuse claim under California's Elder Abuse and Dependent

20  Adult Civil Protection Act (Cal. Welf. & Inst. Code, § 15600 et seq.).

21  **I.      Negligence and Conversion**

22       On the current record, the Court declines to find that Miller's negligence and conversion

23  claims are displaced by the California Commercial Code.  However, both claims are

24  insufficiently pled.

25       **A.      Displacement by Division 11**

26       First, BOA argues that Miller's common law claims of negligence and conversion are

27  displaced by Division 11 of the California Uniform Commercial Code ("UCC").  (Doc. 5 at 10.)

28  Miller counters only that "[d]efendant's reliance on the commercial code is misplaced," without

1   further detail.  (Doc. 10 at 2.)

2          Division 11, also known as California Commercial Code §§ 11101 et seq., "provide[s] a

3   detailed scheme for analyzing the rights, duties and liabilities of banks and their customers in

4   connection with the authorization and verification" of certain "funds transfers" as defined by

5   § 11104.  *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 251–52 (2007) (explaining that

6   Division 11 "provides a very specific scheme for allocation of loss").  Where there is a funds

7   transfer covered by Division 11, courts must determine whether Division 11 "applies to the

8   exclusion of other legal principles giving rise to other causes of action," including "the principles

9   of law and equity" and "the law relative to capacity to contract." *Zengen*, 41 Cal. 4th at 251–52.

10         The "funds transfers" subject to Division 11 include:

11              the series of transactions, beginning with the originator's payment
                order, made for the purpose of making payment to the beneficiary of
12              the order. The term includes any payment order issued by the
                originator's bank or an intermediary bank intended to carry out the
13              originator's payment order. A funds transfer is completed by
                acceptance by the beneficiary's bank of a payment order for the
14              benefit of the beneficiary of the originator's payment order.

15   Cal. Com. Code. § 11104.  According to an attachment to the Complaint, Miller's wife removed

16   money from the account using a variety of methods, including wire transfers, "online banking

17   transfers", cash withdrawals, checks, Paypal payments, Zelle transfers, Cash App transfers, and

18   Apple Pay transactions, among other things.  (Doc. 23 at 12–14.)  Some of these transactions,

19   including the wire transfers, are unequivocally "funds transfers" within the purview of Division

20   11.  *Zengen*, 41 Cal. 4th at 252–253 ("The focus of [Division 11] is a type of payment, commonly

21   referred to as a 'wholesale wire transfer' . . .") (internal quotations omitted); *see also Attisha*

22   *Enterprises, Inc. v. Cap. One, N.A.*, 505 F. Supp. 3d 1051, 1057 (S.D. Cal. 2020*)*.

23         However, the applicability of Division 11 to the other transfer methods in this case is

24   somewhat unclear.  *Zengen*, for example, notes that some transactions falling under § 11104's

25   definition of "funds transfer" may be governed not by Division 11, but by the Electronic Fund

26   Transfer Act of 1978, 15 U.S.C. § 1693, et seq.  BOA has not provided the Court with caselaw

27   suggesting that all of Miller's wife's transactions fall under Division 11.  Without further

28   information, and absent a showing that all transfers at issue in this case constitute "funds

transfers" under § 11104, the Court declines to dismiss Plaintiff's claims on the ground that they are displaced by the California Uniform Commercial Code.  *See Barrett v. JP Morgan Chase Bank*, No. 14CV2976 DMS WVG, 2015 WL 631652 at *4 (S.D. Cal. Feb. 13, 2015) (declining to find claims displaced by the California UCC without sufficient argument that Division 11 applied to the transactions at issue).

### B.    Sufficiency of Negligence Claim

Assuming that Division 11 does not apply to all the funds transfers, the Court finds that Miller has failed to sufficiently allege BOA's negligence.  The elements of a negligence cause of action are (1) duty; (2) breach of duty; (3) causation; and (4) damages.  *Koepke v. Loo*, 18 Cal. App. 4th 1444, 1448–49 (1993).  BOA contends that Miller's negligence claim should be dismissed because the economic loss rule bars recovery; that BOA does not owe Plaintiff a duty of care to supervise his account; that BOA had a contractual obligation to honor Plaintiff's wife's transfer requests; and Plaintiff alleged no facts showing that BOA breached its contractual duties. (Doc. 5 at 14–15.)  Miller does not address any of these arguments in his opposition, noting only that "[t]he complaint provides defendant with fair notice of the claim" because "[p]aragraphs 14 and 15 clearly allege all of the requisite elements of a negligence cause of action." (Doc. 10 at 6.) The Court need only address the applicability of the economic loss rule, as it disposes of Miller's negligence claim.

BOA is correct that Miller's negligence claim is precluded by the economic loss doctrine, in which plaintiffs may recover in tort for physical injury to person or property, but not for "purely economic losses that may be recovered in a contract action."  *San Francisco Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1327 (1995); *see also Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 820 (N.D. Cal. 2014) (citing *Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x. 603, 605 (9th Cir. 2008)) ("In actions for negligence in California, recovery of purely economic loss is foreclosed in the absence of (1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule.").

Miller's Complaint alleges only economic damages.  (Doc. 1-1 at ¶ 16, describing

1    Plaintiff's losses as "totaling over $832,000"; *see also* ¶ 12.)  Because Miller fails to allege facts

2    showing noneconomic loss, he fails to state a claim for negligence.  Accordingly, BOA's motion

3    to dismiss Plaintiff's negligence claim is **GRANTED**.

4         **C.    Sufficiency of Conversion Claim**

5         Miller similarly fails to properly plead a conversion claim.  Miller claims that BOA

6    committed conversion by way of its "wrongful" exercise of control over his money.  (Doc. 1-1 at

7    ¶¶ 18–19.)  BOA argues that the funds legally became its property once Plaintiff and his wife

8    made deposits into their BOA accounts.  (Doc. 5 at 21.)  Miller does not address this argument in

9    his opposition. (Doc. 10 at 5–6.)

10        California law provides that, "conversion is the wrongful exercise of dominion over the

11   property of another." *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 451 (1997) (internal

12   quotation marks omitted).  The elements of a claim for conversion are (1) the plaintiff's

13   ownership or right to possession of the property at the time of the conversion, (2) the defendant's

14   conversion by a wrongful act or disposition of property rights, and (3) damages.  *Prakashpalan v.*

15   *Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1135 (2014).  "California cases permitting

16   an action for conversion of money typically involve those who have misappropriated,

17   commingled, or misapplied specific funds held for the benefit of others."  *PCO, Inc. v.*

18   *Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 396

19   (2007).

20        "As a matter of law, a bank owns the funds deposited in it."  *Trabulsi v. Wells Fargo*

21   *Bank, Nat'l Ass'n*, Case No. 8:17-cv-02088 JLS (SK), 2018 WL 6444897, at *4 (C.D. Cal. Nov.

22   16, 2018).  "California law is well-settled in this area that a claim against the bank for conversion

23   will not lie. Because title to a deposit passes immediately to the bank upon deposit, a depositor

24   has no conversion claim against a bank under California law."  *Schertzer v. Bank of Am., N.A.*,

25   445 F. Supp. 3d 1058, 1093 (S.D. Cal. 2020) (citing *Chavez v. Bank of Am. Corp.*, No. C-10-0653

26   JCS, 2012 WL 1594272, at *11 (N.D. Cal. May 4, 2012)); *see also Gutierrez v. Wells Fargo*

27   *Bank N.A.*, 622 F. Supp. 2d 946, 956 (N.D. Cal. 2009) ("A bank may not be sued for conversion

28   of funds deposited with the bank.")  Because BOA, not Miller, owned the funds at issue when

they were transferred, Miller's conversion claim fails as a matter of law and is **DISMISSED WITH PREJUDICE**.

## II.     Negligence *Per Se*

Miller also lists "negligence per se" as a cause of action against BOA for BOA's alleged failure to adhere to various money laundering and anti-terrorism statutes, including the Money Laundering Control Act of 1986 (18 U.S.C. § 981; 18 U.S.C. § 1956–57; 18 U.S.C. § 1961) and sections of the Patriot Act. (Doc. 1-1 at 7.)  BOA correctly points out that negligence per se is not a cause of action for which Plaintiff can sue, and none of the cited statutes provide Plaintiff with a private remedy.

"Negligence *per se* is an evidentiary doctrine, rather than an independent cause of action." *Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp. 3d 1332, 1344 (E.D. Cal. 2020) (citing *Jones v. Awad*, 39 Cal. App. 5th 1200, 1210 (2019).)  "The doctrine of negligence per se does not provide a private right of action for violation of a statute." *Id*. (citing *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 737–38 (2010) (emphasis added) (citation omitted).)

For negligence per se to be employed, there must be an underlying claim of ordinary negligence. *Strojnik*, 436 F. Supp. 3d at 1344.  As discussed above, Miller has failed to sufficiently plead an underlying claim of negligence in the operative Complaint.  Further, Miller provides no authority, and the Court is not aware of any, to show that Congress enacted the cited money laundering regulations to establish a separate duty of care giving rise to an independent negligence claim under state laws.  *Vann v. Wells Fargo Bank*, No. C 12-1181 PJH, 2012 WL 1910032, at *4–5 (N.D. Cal. May 24, 2012) (finding no private right of action under the Money Laundering Control Act); *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-CV-02778-TSH, 2019 WL 3503109, at *6 (N.D. Cal. Aug. 1, 2019) (no private right of action under the Bank Secrecy Act) (citing cases).  Even assuming that BOA did violate these statutes, Miller cannot sue BOA for those violations. Because negligence *per se* is not a viable cause of action and there is no private right of action under the cited money laundering statutes, this claim is **DISMISSED WITH PREJUDICE**

///

### III.   Elder Abuse

Finally, BOA argues that Miller's elder abuse claim should be dismissed because California's Elder Abuse and Dependent Adult Civil Protection Act (the "Elder Abuse Act") does not create an independent cause of action, and Plaintiff does not allege sufficient facts to maintain the claim.

As an initial matter, California courts are divided on whether California's Welfare and Institutions Code (Cal. Welf. & Inst. Code, § 15600 et seq.) creates an independent cause of action or merely allows enhanced remedies when a plaintiff succeeds on an otherwise viable claim involving elder abuse.  *See Strawn v. Morris, Polich & Purdy, LLP*, 30 Cal. App. 5th 1087, 1103 n. 6 (2019) (discussing the divide); *see also Das*, 186 Cal. App. 4th at 743–44.  The Court need not resolve this issue, because Plaintiff's allegations do not state a claim against BOA for financial abuse of an elder in any event.

Financial abuse of an elder, defined as "any person residing in this state, 65 years of age or older,"[1] *see* Cal. Welf. & Inst. Code § 15610.27, occurs in three circumstances: (1) when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder ... for a wrongful use or with intent to defraud, or both," Cal. Welf. & Inst. Code § 15610.30(a)(1); (2) when a person or entity "[a]ssists" in the aforementioned conduct "for a wrongful use or with intent to defraud, or both," Cal. Welf. & Inst. Code § 15610.30(a)(2); or (3) when a person or entity commits either of the above actions "by undue influence." Cal. Welf. & Inst. Code § 15610.30(a)(3).  "[W]rongful use" encompasses when a person or entity "knew or should have known that [its] conduct is likely to be harmful to the elder," Cal. Welf. & Inst. Code § 15610.30(b), and "undue influence" is defined as "excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity," which entails consideration of "[t]he vulnerability of the victim," "[t]he influencer's apparent authority," "[t]he actions or tactics used by the influencer," and "[t]he equity of the result." *See* Cal. Welf. & Inst. Code § 15610.70(a).

Miller's elder abuse claim appears to rest on the third theory: that, by conducting the

---

[1]  The parties do not dispute that Miller and his wife were 65 or older at the time of the events in question.

transfers with only his wife's approval, BOA exercised "undue influence" to take, appropriate, obtain, retain, or assist in any of the foregoing, Miller's real or personal property.  (*See* Doc. 1-1 at ¶ 21.)  This claim fails because Miller has not pled any facts plausibly suggesting that BOA itself exercised "undue influence" as defined in § 15610.70.  Miller's complaint merely alleges that BOA "failed and refused to properly manage Plaintiff[']s bank accounts." (Doc. 1-1 at 6.) This is insufficient.  *See Bortz v. JPMorgan Chase Bank, N.A.*, No. 21-CV-618 TWR (DEB), 2022 WL 1489832, at *6 (S.D. Cal. May 10, 2022) (finding insufficient conclusory allegations of undue influence).

To the extent that Plaintiff also intended to state claims under § 15610.27(a)(1) or (a)(2), those claims are also insufficiently pled.  Where, as here, an account owner initiated the transfers, third party scammers obtained the funds, and the defendant bank merely processed the transactions, there is no claim for a "direct taking" under § 15610.27(a)(1).  *Bortz*, 2022 WL 1489832, at *5.  To show that a defendant bank "assisted" an impermissible direct taking under § 15610.27(a)(2), Plaintiff must plead BOA's actual knowledge of the third-party scammer's wrongful conduct.  *Bortz*, 2022 WL 1489832, at *6; *see also Das*, 186 Cal. App. 4th at 745 (dismissing elder abuse claims against bank where the bank provided ordinary services that effectuated financial abuse by a third party but did not know of the third party's wrongful conduct.)  Plaintiff has not pled facts alleging BOA's direct knowledge of the scam.

Because Plaintiff has not sufficiently pled a direct taking, undue influence, or BOA's direct knowledge of the third-party scam, all claims under Cal. Welf. & Inst. Code § 15610.30 are **DISMISSED**.

## IV.    Leave to Amend

Miller requests leave to amend his complaint.  (Doc. 10 at 8.)  Rule 15 governs amendments to pleadings before trial.  Rule 15(a)(2) allows a party to amend its pleading with the court's leave, providing that "the court should freely give leave when justice so requires."  Fed. R. Civ. P. Rule 15(a)(2). This policy should be applied with "extreme liberality."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Leave should be granted in the absence of a substantial reason to deny, such as a showing of any of the factors set forth in *Foman*

1 | *v. Davis*, 371 U.S. 178, 182 (1962).  These factors include "undue delay, bad faith or dilatory

2 | motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

3 | allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and]

4 | futility of amendment."  *Id*.  Because there is no evidence of undue delay, bad faith, or dilatory

5 | motive, and Miller has not yet been provided opportunity to amend his complaint, the Court

6 | **GRANTS** Plaintiff leave to amend.

### CONCLUSION

8 | Accordingly:

9 | 1. Defendant Bank of America, N.A.'s Motion to Dismiss the complaint in its

10 | entirety, (Doc. 5), is **GRANTED**.

11 | 2. Plaintiff Charles Miller is **GRANTED** leave to amend his complaint as to all

12 | claims except conversion and negligence *per se*, which are **DISMISSED WITH**

13 | **PREJUDICE**.

IT IS SO ORDERED.

Dated:   **August 26, 2022**

*Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE